**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GHOLAMREZA BARAZANDEH, | |
| Plaintiff, | |
| v. | Civil Action No. 23-1581 (BAH) |
| | Judge Beryl A. Howell |
| U.S. DEPARTMENT OF STATE *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiff Gholamreza Barazandeh, a citizen of Iran, seeks to compel defendants the United States Department of State ("State Department") and the Secretary of State in his official capacity, to adjudicate his immigrant visa application, which has now been in administrative processing for approximately twenty months. *See generally* Compl., ECF No. 1. Plaintiff claims that defendants have unreasonably delayed his visa application, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361. *See* Compl. ¶¶ 33–50. Defendants, in turn, have moved to dismiss the claims for lack of standing and for failure to state a claim. *See* Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 5; Pl.'s Opp'n Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 6; Defs.' Reply Supp. Mot. to Dismiss ("Defs.' Reply"), ECF No. 9. For the reasons below, defendants' motion is granted.

I.     **BACKGROUND**

A review of the statutory and regulatory background underlying the claims is below, followed by a summary of the factual and procedural history of this case.

A.     **Statutory and Regulatory Background**

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, allows for the issuance of immigrant visas, including for relatives of U.S. citizens. *See* 8 U.S.C. § 1154; 8

C.F.R. § 204.1(a)(1), (b).  A U.S. citizen seeking permanent resident status for a parent or other family member may fill out a Form I-130, Petition for Alien Relative, with U.S. Customs and Immigration Services ("USCIS").  *See* 8 C.F.R. § 204.1(a)(1); 8 U.S.C. § 1154; *see also* 8 U.S.C. § 1151(b)(2)(A)(i) (defining an "immediate relative[]" to include "parents" for purposes of Form I-130 petitioners).  If USCIS approves the petition, the case is forwarded to the National Visa Center ("NVC") for processing.  8 C.F.R. § 204.2(a)(3).  The NVC serves as the visa application processing center for the State Department.  *Id.*

Following approval of the petition, the foreign parent must submit paperwork and processing fees to the NVC.  *See* 22 C.F.R. § 42.67 (outlining application fees and additional documentation that an applicant must submit to the NVC to complete their application).  The NVC then schedules a consular interview for the applicant at the embassy with jurisdiction over the applicant's residence.  *Id.* § 42.62.  The consular officer must either issue or refuse the visa following the interview.  *Id.* § 42.81(a).

### B.    Factual Background

On April 6, 2021, Mohammad Barazandeh, a U.S. citizen, filed an I-130 visa application with USCIS on behalf of his father, who is the plaintiff in this action and a citizen of Iran. Compl. ¶¶ 8–9.  USCIS received and approved the petition and transferred it to the NVC.  *Id.* ¶ 10; *see also* Compl., Ex. at 5, ECF No. 1-6 (approval notice).  Plaintiff was then granted a consular interview at the U.S. Embassy in Yerevan, Armenia, where he was interviewed on May 18, 2022.  Compl. ¶¶ 12–14; *see also* 22 C.F.R. § 42.62 (requiring every U.S. immigrant visa applicant to submit to an interview by a consular official for "execution of the application"); Compl., Ex. at 13 (email with interview details).  Plaintiff's wife, who filed a similar application,

2

was also interviewed on May 18, 2022, and was promptly issued an immigrant visa.  Compl.
¶¶ 14, 16.

Plaintiff, in contrast to his wife, was informed that his visa application had been "refused
for administrative processing" and was asked for additional information regarding his visa
application, which information plaintiff quickly provided.  *Id.* ¶¶ 15, 17–18; Compl., Ex. at 15–
16 (letter from Embassy refusing visa application for administrative processing due to missing
documents, including birth certificate), 20–31 (email exchange between consular officer, who
requested more information, and plaintiff, who provided responses on May 25, 2022).  Despite
numerous inquiries, *see, e.g.*, Compl., Ex. at 34–44, plaintiff has received no meaningful
response or a timeline for the processing of his application.  Compl. ¶¶ 19–20.  As of January
2024, plaintiff's application for an immigrant visa to the United States appears to have been
refused.  *See id.* ¶ 13 (identifying plaintiff's NVC visa application number (YRV2022602005));
*Visa Status Check*, U.S. Dep't of State, https://ceac.state.gov/CEACStatTracker/Status.aspx,
though the same page of the State Department's website suggests that his application remains
subject to additional administrative processing before a final decision is rendered, *see Visa Status
Check* ("If you were informed by the consular officer that your case was refused for
administrative processing, your case will remain refused while undergoing such processing.  You
will receive another adjudication once such processing is complete.").[1]

Meanwhile, plaintiff's delay in receiving a final decision on his visa petition has "caused
him and his family to suffer significant, ongoing harm" due to his "remain[ing] in legal limbo"
and his being "alone in Iran," while his son and wife reside in the United States.  Compl. ¶ 23.

---

[1]     Judicial notice is appropriately taken of information on the government's official public websites.  *See
Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013).

### C.      Procedural History

On June 2, 2023, just over a year after his visa application was refused, plaintiff filed a two-count complaint to compel defendants to adjudicate his visa application.  Plaintiff maintains that defendants retain jurisdiction over his visa application and alleges that he "has suffered and continues to suffer significant ongoing harm from the delay in adjudication of his [a]pplication." *Id.* ¶ 49; *see also id.* ¶ 36.  While plaintiff argues that "consular officials are required to act on visa applications," *id.* ¶ 25, plaintiff does not seek review of any final decision by defendants on his application and seeks, instead, only adjudication of his visa application under the APA, *id.* ¶¶ 33–44, and the Mandamus Act, *id.* ¶¶ 45–50.  *See id.* ¶ 28 ("Plaintiff seeks enforcement of this duty to adjudicate, not judicial review of the merits of Plaintiff's Application or control of Defendants' discretion and judgment in adjudication.").  In his Prayer for Relief, plaintiff requests declaratory, injunctive, and mandamus relief and attorneys' fees and costs.

Defendants, in turn, have moved to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## II.     LEGAL STANDARD

### A.      Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted). "[F]orbidden . . . from acting beyond [their] authority," *NetworkIP, LLC v. Fed. Commc'n Comm'n*, 548 F.3d 116, 120 (D.C. Cir. 2008), federal courts thus "have an affirmative obligation to consider whether the constitutional and statutory authority exist for us to hear each dispute," *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (citation omitted).

Absent subject-matter jurisdiction, a case must be dismissed.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006); *see also* Fed. R. Civ. P. 12(h)(3).

When considering a motion to dismiss under Rule 12(b)(1), the court "must assume that [the plaintiff] states a valid legal claim," *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003), and must "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor," *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In addition, to assure itself of its jurisdiction over a claim, "the district court may consider materials outside the pleadings."  *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B.      Motion to Dismiss for Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (citation omitted).  A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability" and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

In deciding a motion under Rule 12(b)(6), a court must consider the whole complaint, accepting all factual allegations in the complaint as true, even if doubtful in fact, and construing all reasonable inferences in the plaintiff's favor.  *Twombly*, 550 U.S. at 555; *see also Atchley v.*

*AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022).  A court, however, does not "accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint."  *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations in original accepted and citation omitted); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice."  *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alterations in original accepted and citation omitted).

## III.    DISCUSSION

Defendants advance three main arguments in support of dismissal: that (1) the Secretary of State has no role in re-adjudicating plaintiff's visa request, cannot provide the relief requested, and is thus an improper defendant; (2) the doctrine of consular nonreviewability bars judicial review; and (3) plaintiff fails to state viable claims of relief for unreasonable delay under the Mandamus Act and the APA.  These arguments will be addressed *seriatim*.

### A.    Improper Defendant

The INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations."  *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).  Relying on this language, defendants argue that the Secretary of State, who has "no role in re-adjudicating the visa request" and "cannot re-adjudicate [plaintiff's] application for a visa," is an improper defendant because he "cannot provide the relief requested."  Defs.' Mot. at 4.  Courts in this district have repeatedly rejected

this argument.  *See, e.g.*, *Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022); *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023); *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 233 (D.D.C. 2021); *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 89–90 (D.D.C. 2022); *Khoshrou v. Blinken*, No. 22-cv-2859, 2023 WL 4930086, at *4 (D.D.C. Aug. 2, 2023).  Defendants, who do not even acknowledge this body of case law, offer no reason to depart from this uniform conclusion here.

No one disputes that the INA bars the Secretary of State from directing a particular outcome with respect to a visa application.  *See Saavedra Bruno*, 197 F.3d at 1156 ("The powers afforded to consular officers include, in particular, the granting, denying and revoking of immigrant and non-immigrant visas."); *Baan Rao*, 985 F.3d at 1024 ("A consular officer . . . has the authority to grant, deny or revoke any visa.").  "Control over a consular officer's visa *determinations*," however, "is not the same as control over the *timing* by which the consular officer considers the applications presented to her."  *Al-Gharawy*, 617 F. Supp. 3d at 10.  Put differently, "nothing in *Baan Rao* or *Saavedra Bruno* precludes the Secretary [of State]—who oversees the State Department (who [d]efendants have not moved to dismiss [on this basis])—from directing consular officers 'to conclude matters presented to them' 'within a reasonable time.'"  *Id.* (alterations in original accepted) (quoting 5 U.S.C. § 555(b)); *see also Ramirez*, 594 F. Supp. 3d at 90 ("The provisions and caselaw the government cites stand for a far more limited proposition: that the INA reserves for consular officials the power to evaluate applications on the merits.").  Here, plaintiff does not challenge a consular officer's adjudication of his visa application and seeks only timely adjudication of his visa application.  *See* Compl. ¶ 28.  The Secretary of State is thus a properly named defendant.

### B.    Consular Nonreviewability

"Deciding who is allowed into the United States and who is not can involve hard policy choices" that "may 'implicate' America's relationship with 'foreign powers' or require evaluating 'changing political and economic circumstances.'" *Colindres v. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023) (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2418–19 (2018)). "[T]he power to exclude [non-citizens]" is thus "a power to be exercised exclusively by the political branches." *Id.* (citation omitted). "Reflecting the limited role of the judiciary," the doctrine of consular nonreviewability "'shields a consular official's decision to issue or withhold a visa from judicial review,' with two narrow exceptions." *Id.* (quoting *Baan Rao*, 985 F.3d at 1024–25). "The first exception applies when 'a statute expressly authorized judicial review,'" and "[t]he second exception lets 'an American citizen challenge the exclusion of a noncitizen if it burdens the citizen's constitutional rights.'" *Id.* (alteration in original accepted) (quoting *Baan Rao*, 985 F.3d at 1024).

Defendants argue that "the claim brought here—a suit seeking to compel a further decision on a visa application that has already been refused"—does not fall into either exception and thus that the doctrine of consular nonreviewability precludes judicial review of plaintiff's claims. Defs.' Mot. at 6; *see also* Defs.' Reply at 2 ("Plaintiff cannot identify a clear, non-discretionary duty for a consular office to re-adjudicate any specific visa application."). Defendants acknowledge that "various judges in this District have held that the doctrine does not apply in cases where, as here, a consular officer has refused a visa application under 8 U.S.C. § 1201(g), based on a noncitizen's failure to establish their eligibility subject to further administrative proceeding." Defs.' Mot. at 6. Nonetheless, relying on *Abdo v. Tillerson*, No. 17-cv-7519, 2019 WL 464819 (S.D.N.Y. Feb. 5, 2019), a non-binding out-of-Circuit district court

case, defendants urge departure from this Circuit's uniform and binding caselaw. *Id.* The Court is not persuaded.

In *Abdo*, the district court explained that "[i]n [the Second] Circuit, the doctrine of consular nonreviewability applies not only when 'a plaintiff challenges an official's discretionary decision to approve or deny a visa application,' but also 'where a plaintiff seeks to compel an official to simply adjudicate a visa application.'" *Abdo*, 2019 WL 46819, at *3 (quoting *Al Naham v. Dep't of State*, No. 14-cv-9974, 2015 WL 3457448, at *3 (S.D.N.Y. June 1, 2015)). The court proceeded to catalogue New York district court cases to support this principle, all of which ground their conclusion in a broad declaration by the Second Circuit that "the judiciary will not interfere with the visa-issuing process." *Id.* (quoting *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978)). The court further acknowledged that other circuits, such as the Ninth Circuit, have recognized "a distinction between challenging a decision and compelling adjudication," but rejected the distinction, explaining that it "is not one that has a basis in Second Circuit law." *Id.* (alterations in original accepted and citation omitted) (citing *Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1997)).

As defendants concede and as discussed above, courts in this Circuit, interpreting *Baan Rao* and *Saavedra Bruno*, have recognized the distinction between challenging a decision and compelling adjudication and have concluded that the doctrine of consular nonreviewability does not "'insulate a delay in reaching' final decisions on visa applications 'from judicial review.'" *Isse v. Whitman*, No. 22-cv-3114, 2023 WL 4174357, at *4 (D.D.C. June 26, 2023) (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020)).[2] This is because "[a]n assessment of

---

[2]     The only Court of Appeals decision that appears to have directly addressed this issue is *Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997), which, like the courts in this Circuit, acknowledged a distinction between suits challenging "the authority of the consul to take or fail to take an action" and suits challenging "a decision taken within the consul's discretion," *id.* at 931–32.

whether the government has delayed action on a particular visa application is not the type of political consideration that the consular nonreviewability doctrine aims to avoid, and that assessment is not 'an area in which legislative and traditional practice indicate that courts are unqualified or that issues are inappropriate for judicial determination.'" *Id.* (quoting *Saavedra Bruno*, 197 F.3d at 1160). "'[T]he doctrine of consular nonreviewability is [thus] not triggered' when 'a consular office' has not rendered a final decision and the visa application remains under consideration,'" including when an application is listed as "rejected" based on it being "refused for administrative processing." *Id.* at *4–5 (quoting *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016)); *see also Al-Gharawy*, 617 F. Supp. 3d at 16 (recognizing "a long line of decisions from this Court [that] have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision," and cataloguing cases); *Ibrahim v. Dep't of State*, No. 19-cv-610, 2020 WL 1703892, at *5 (D.D.C. Apr. 8, 2020) (recognizing overwhelming caselaw in this district supporting proposition that "where the application is still undergoing administrative processing, even where a refusal has been relayed, the decision is not final, and thus claims alleging unreasonable delay while a case remains suspended in administrative processing are not barred by the doctrine of consular nonreviewability," and collecting cases (citations omitted)); *Patel*, 134 F.3d at 931–33 (concluding that mandamus relief was appropriate to compel action on visa application that had been only "provisionl[ly] refus[ed]" and a final decision had not been issued).[3]

---

[3]      The relevance of defendants' argument that "as Judge Moss wrote in *Al-Gharawy*, no decision from this District before July 2022 attempted to square the diverging views of *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 293 (D.D.C. 2016) (Kessler, J.) (the ultimate source of decisions finding the doctrine inapplicable), and the decisions from courts in the Second Circuit cited above" is unclear, Defs.' Mot. at 7, since the *Al-Gharawy* decision

The facts here are indistinguishable from the facts in *Al-Gharawy v. Department of Homeland Security* and *Isse v. Whitman*, where plaintiffs' visa applications had similarly been "refused," but plaintiffs were told that their applications needed "further administrative processing."[4]  In both cases, the court reasoned that "although the 'consular nonreviewability doctrine applies to a consular officer's *substantive* decisions to approve or deny a visa application, that same reasoning does not extend to the *procedural* considerations at issue."  *Isse*, 2023 WL 4174357, at *5 (quoting *Al-Gharawy*, 617 F. Supp. 3d at 12).  "Given that the plaintiffs were not requesting the court 'to second guess the Executive in exercising the sovereign powers to exclude aliens,' but were merely requesting the agency be compelled to take a final action on their visa applications, the mere fact that the plaintiffs' visa applications were refused did not preclude judicial review under the doctrine of consular nonreviewability."  *Id.* (quoting *Al-Gharawy*, 617 F. Supp. 3d at 13, 16–17).

Defendants' argument that plaintiff's application was "refused" and "already has been adjudicated," Defs.' Reply at 2, fails to take the allegations in the Complaint as true.  *See Doe v. Siddig*, 810 F. Supp. 2d 127, 132 (D.D.C. 2011) ("It is hornbook law that, on a motion to dismiss, the court must accept as true the well-pleaded factual allegations in the complaint, and confine its consideration to those allegations.").  As alleged in the Complaint, as in *Al-Gharawy* and *Isse*, plaintiff's "refused" application here is not a final decision on his application because he was informed that his visa application is still undergoing "administrative processing."  Compl.

---

did precisely what defendants criticize "decision[s] from this District before July 2022" for not doing.  *See Al-Gharawy*, 617 F. Supp. 3d at 11–17 (acknowledging the different approaches taken by districts courts in this and the Second Circuits, and offering several reasons, "[a]fter reviewing both lines of authority," that "the decisions that hold that the consular nonreviewability doctrine does not bar suits that merely seek to compel *some* agency action—regardless of the substance of that action—have the better view").

[4]      Defendants do not attempt to distinguish *Al-Gharawy* and argue only that it was wrongly decided.  Defs.' Mot. at 7.

¶ 15; *see also Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022) (explaining that "a refusal is often not final because the application may be subject to further administrative processing," which "means that additional information is needed before a consular officer can determine whether an applicant is qualified for the visa for which she has applied" (citations omitted)); *Administrative Processing Information*, Travel.State.Gov, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (explaining that upon completion of further administrative processing, the consular will conclude that the applicant either "is now qualified for the visa for which he or she applied" or "remains ineligible for a visa").  Indeed, after this initial "refusal" for administrative processing, consular officers continued to correspond with plaintiff about his application, including requesting more information to supplement his visa application.  Compl. ¶ 17.  As recently as May 2023, the Embassy confirmed in response to an email from plaintiff's son, that plaintiff's visa application "is still pending under administrative review," and that "as soon as the processing is finalized," plaintiff "*will* be contacted via email with *instructions on [] further steps*."  Compl., Ex. at 38 (emphasis added); *see also id.* at 34 (Embassy stating, in December 2022 email, "as soon as the processing is finalized the applicant will be contacted with instructions on further steps").

The pending nature of plaintiff's application is further confirmed by his case status on the State Department's website, which expressly provides that if plaintiff was "informed by the consular office that [his] case was refused for administrative processing, [his] case will remain refused while undergoing such processing," and that he "*will receive another adjudication* once such processing is complete."  *Visa Status Check* (emphasis added); *see also* Compl., Ex. at 46. The use of "will" in these communications all but guarantees plaintiff another adjudication once

administrative processing is complete.  As another court in this district has noted, "[t]here is

nothing unusual about this practice, but it means that the initial 'refusal' is not the end of the

process."  *Giliana*, 596 F. Supp. 3d at 18.  Given that plaintiff is still awaiting a final decision on

his visa application, the consular nonreviewability doctrine does not bar review since the

"refusal" plaintiff received was "merely provisional, with a final decision yet to come."  *Al-

Gharawy*, 617 F. Supp. 3d at 16.

> **C.    Unreasonable Delay**

Turning to the merits of plaintiff's claims, in cases challenging agency delay, "the

standards for obtaining relief" under the APA and the Mandamus Act are "essentially the same."

*Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010); *see also Bagherian

v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020) ("The standard by which a court reviews

agency inaction is the same under both § 706(1) of the APA and the Mandamus Act." (alteration

in original accepted) (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017))).  In

each circumstance, "[t]he central question" is "whether the agency's delay is so egregious as to

warrant mandamus."  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (citation

omitted).  Plaintiff's APA and Mandamus Act claims will thus be considered together.

Defendants argue, at the outset, that plaintiff's claims are not reviewable because plaintiff

has not identified a mandatory non-discretionary agency action.  *See* Defs.' Mot. at 9–14; *see

also In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000) ("[I]ssuance of the writ is

an extraordinary remedy, reserved only for the most transparent violations of a clear duty to

act."); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("[A] claim under § 706(1) can

proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it

is *required to take*." (emphasis in original)).  The Court assumes, without deciding, that plaintiff

has identified a mandatory non-discretionary agency action in the form of the statutory requirement that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer."  8 U.S.C. § 1202(b); *see Khamrabaeva v. Blinken*, No. 22-cv-1219, 2022 WL 4446387, at *5 (D.D.C. Sept. 24, 2022) (noting that "[c]ourts in this circuit have taken different approaches . . . in different contexts" to the question whether Section 1202(b) imposes a nondiscretionary duty on the government to adjudicate visas, and surveying these different approaches); *see also Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) ("[A] complaint seeking review of agency action 'committed to agency discretion by law' has failed to state a claim under the APA, and therefore should be dismissed under Rule 12(b)(6), not under the jurisdictional provision of Rule 12(b)(1)." (quoting 5 U.S.C. § 701(a)(2))); *see, e.g.*, *Ghadami v. Dep't of Homeland Sec.*, No. 19-cv-397, 2020 WL 1308376, at *7 (D.D.C. Mar. 19, 2020) (assuming plaintiffs' visa mandamus claims are reviewable under APA and turning straight to the *TRAC* factors); *Bagherian*, 442 F. Supp. 3d at 94 (same); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175 & n.4 (D.D.C. 2020) (same).[5]

To determine whether a delay in agency action is unreasonable, six factors, known as the "*TRAC* factors," are considered:

---

[5]      In arguing that plaintiff's claims are not reviewable under the APA, defendants characterize plaintiff's claim as a request "to reconsider a refused visa application."  Defs.' Mot. at 10.  As explained above, such characterization fails to take the allegations in the Complaint as true.  Rather, the Complaint alleges that plaintiff's "refused" application is not a final decision because he was informed that his visa application is still undergoing "administrative processing."  Compl. ¶ 15.  Both caselaw and the State Department's own website make clear that a refusal based on the need for further administrative processing is not a final refusal.  Put differently, plaintiff alleges that his application is still pending, and the "clear duty" that defendants have allegedly breached is not a duty to reconsider a refused visa application, but a consular officer's duty to review and adjudicate immigrant visa applications as set out in 8 U.S.C. § 1202(b).  *See* Compl. ¶ 2.a (explaining that the "[c]ause of action for this suit arises under . . . 8 U.S.C. § 1202(b), giving Plaintiff the right to apply for an Immigrant Visa and giving Plaintiff the right to have his Application adjudicated"), 39 ("Plaintiff has the statutory right to apply for an Immigrant Visa and to be considered for that relief pursuant to INA § 1202(b)."), 48 ("Plaintiff has a clear right . . . to receive a decision on his Application, pursuant to INA § 1202(b)."); *see also Filazapovich*, 560 F. Supp. 3d at 235 (relying on the use of "shall" in 8 U.S.C. § 1202(b) to conclude that it "imposes a mandatory duty on consular officers to review and adjudicate immigrant visa applications" and that plaintiffs' unreasonable delay claims could thus proceed (quoting *Gomez v. Biden*, No. 20-cv-1419, 2021 WL 3663535, at *20 (D.D.C. Aug. 17, 2021))).

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. Fed. Commc'ns Comm'n ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984) (citations omitted).  Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).[6]  The *TRAC* factors are considered below.

### 1.    *TRAC* Factors 1 and 2

The first and second *TRAC* weigh in defendants' favor because the delay in adjudicating plaintiff's visa application—just under thirteen months—is not unreasonable.[7]  These two factors

---

[6]    While some decisions issued in this Court "have declined to evaluate claims of 'unreasonable delay' before discovery, noting that doing so would be 'premature' because the inquiry is 'fact intensive,'" *Desai v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-1005, 2021 WL 1110737, at *4 (D.D.C. Mar. 22, 2021) (quoting *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 (D.D.C. 2020)), in the majority of cases, the *TRAC* factors have been applied at the motion to dismiss stage to determine "whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay," *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (citation omitted); *see, e.g.*, *Bagherian*, 442 F. Supp. 3d at 94–95; *Isse*, 2023 WL 4174357, at *6.  As in those cases, the record here provides enough factual background to evaluate the *TRAC* factors, and plaintiff does not appear to challenge the timing of the unreasonable day inquiry.  *See* Pl.'s Opp'n at 10–14 (applying the *TRAC* factors).

[7]    The Complaint alleges an approximately seventeen-month delay in the adjudication of plaintiff's visa application, *see* Compl. ¶ 30, and plaintiff's opposition alleges a sixteen-month delay for administrative processing, *see* Pl.'s Opp'n at 1.  The proper method for calculating delay, however, is the length of time between the last action the government took on a visa application and the filing of plaintiff's complaint.  *See, e.g.*, *Isse*, 2023 WL 4174357, at *6 n.4; *Arab v. Blinken*, 600 F. Supp. 3d 59, 68 n.7 (D.D.C. 2022).  The last action taken on plaintiff's visa application was his consular interview in Yerevan in May 2022.  The time between that action and June 2023, the date plaintiff filed this suit, is just under thirteen months.

are typically considered together, with the first factor being more important.  *See In re Core Commc'ns, Inc.*, 531 F.3d at 855–57; *see also Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317–18 (D.D.C. 2020).

"[N]o statutory or regulatory timeline exists within which the State Department or a consular office must re-adjudicate visa applications."  *Isse*, 2023 WL 4174357, at *7 (alteration in original accepted and citation omitted); *see also* Defs.' Mot. at 17 (recognizing lack of congressional mandate); Pl.'s Opp'n at 12 (same).  Rather, Congress gives the agency "wide discretion" in visa processing timelines, *Skalka*, 246 F. Supp. 3d at 153–54, and "[d]ecisions regarding the admission of foreign nationals are granted an especially wide degree of deference, as they frequently implicate 'relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances,'" *Didban*, 435 F. Supp. 3d at 176 (quoting *Trump*, 138 S. Ct. at 2418–19).

"Absent a congressionally supplied yardstick, courts typically turn to caselaw as a guideline."  *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020).  Even though courts have drawn no bright lines to determine reasonableness, district courts have generally found that immigration delays of two to three years are reasonable.  *See, e.g.*, *Isse*, 2023 WL 4174357, at *6–7 (finding forty-month delay reasonable); *see also Ghadami*, 2020 WL 1308376, at *8 ("[M]any courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law."); *Skalka*, 246 F. Supp. 3d at 154 (noting that two-year delays in immigration visa processing "do[] not typically require judicial intervention"); *Zandieh v. Pompeo*, No. 20-cv-919, 2020 WL 4346915, at *5–7 (D.D.C. July 29, 2020) (finding 29-month delay reasonable); *Mirbaha v. Pompeo*, 513 F. Supp. 3d 179, 185–86 (D.D.C. 2021)

(noting that "delays between three to five years are often not unreasonable," and finding 27-month delay reasonable (citation omitted)).

Here, plaintiff's visa application was placed in "administrative processing" in May 2022 and was pending for just under thirteen months when plaintiff sued.  Compl. ¶ 15.  Even if the clock ran until January 2024 (which it does not), a twenty-month delay would not be unreasonable.  While plaintiff's application was in "administrative processing," the government has taken some action, including requesting additional documentation from plaintiff.  Compl., Ex. at 15–16, 20–31.

### 2.     *TRAC* Factors 3 and 5

The related third and fifth *TRAC* factors consider "the nature and extent of the interests prejudiced by the delay," including whether "human health and welfare" might be implicated. *TRAC*, 750 F.2d at 80.  Plaintiff alleges that delayed adjudication has caused him "significant, ongoing harm" because he "remain[s] in legal limbo as to whether Plaintiff will be able to join his wife and son in the United States" and "has been alone in Iran for 11 months."  Compl. ¶ 23.[8] Prolonged separation from a spouse or immediate family member may be considered a risk to human health and welfare.  *See Didban*, 435 F. Supp. 3d at 177 (finding these factors to weigh in plaintiff's favor given continued separation of spouses); *Isse*, 2023 WL 4174357, at *7.

---

[8]        In opposition, plaintiff argues that "the Complaint properly alleges that the 'Petitioners have endured significant financial, emotional, and medical hardships as a result of the unreasonable period of time that Petitioners' cases have been in administrative processing" and contends that "Defendants concede that this factor weighs in Plaintiff's favor."  Pl.'s Opp'n at 12 (quoting Compl. ¶ 23).  Paragraph 23 of the Complaint does not say what plaintiff contends; in fact, it does not appear to allege financial, emotion, or medical hardship—only hardship due to plaintiff's separation from his family.  *See* Compl. ¶ 23 (alleging, in its entirety, "[d]elay in adjudicating Plaintiff's Application has caused him and his family to suffer significant, ongoing harm in that they remain in legal limbo as to whether Plaintiff will be able to join his wife and son in the United States, until such time as Defendants adjudicate the Application.  Plaintiff has been alone in Iran for 11 months, awaiting a decision on his Application, while his family is in the United States").  Defendants, in addition, have not conceded that this factor weighs in plaintiff's favor.  *See* Defs.' Mot. at 21 (arguing that factors 3 and 5 "weigh in Defendants' favor").

Defendants acknowledge that the delays have "profoundly impacted the lives of Plaintiff and Plaintiff's family" but nonetheless argue that "advancing the application would simply benefit Plaintiff to the detriment of other noncitizens, who may have experienced the same or worse impacts from a delay," because resources would have to be directed away "from the adjudications that the State Department has identified as more urgent, requiring this Court to overrule the State Department's prioritization decisions and place Plaintiff at the front of the line." Defs.' Mot. at 21–22. While perhaps true, these arguments are more appropriate for *TRAC* factor 4; the individual health or welfare of a specific plaintiff is frequently taken into account when evaluating factors 3 and 5. *See, e.g.*, *Rahimian v. Blinken*, No. 22-cv-785, 2023 WL 143644, at *8 (D.D.C. Jan. 10, 2023); *Sarlak*, 2020 WL 3082018, at *6; *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 15 (D.D.C. 2022). Plaintiff's allegations of harm due to his separation from his family are sufficient for factors 3 and 5 to weigh in his favor.

### 3.      *TRAC* Factor 4

The fourth *TRAC* factor, whether "expediting delayed action" will have a harmful effect on "agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, carries significant weight, *see Mashpee*, 336 F.3d at 1100, and weighs heavily in defendants' favor.

Granting expedited agency action is "viewed as inappropriate" when that relief would "simply 'reorder' a queue of applicants seeking adjudication" and "'no net gain' in such adjudications is achieved." *See Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (quoting *In re Barr Laby's., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). In particular, "where resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities." *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005); *see also Mashpee*, 336 F.3d at 1101 (explaining that a district court must

consider "the importance of there being 'competing priorities' for limited resources," and that a "first-come" procedure is reasonable); *In re Barr Lab'ys*, 930 F.2d at 76 ("In short, we have no basis for reordering agency priorities.  The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.").

Here, if defendants were compelled to act immediately on plaintiff's application, plaintiff's application would move to the head of the queue simply because he sued.  Plaintiff advances no explanation for why other visa applications should be further delayed to expedite his own.  He does not, for example, allege that defendants have stopped processing visa applications, "'point to any unique considerations that warrant an expedited review of his' petition," or "argue that the Government has treated him 'differently than any of the other' petitioners who are facing similar circumstances."  *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 52 (D.D.C. 2021) (quoting *Uranga v. U.S. Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 105 (D.D.C. 2020)).  He argues only that "[d]efendants do not provide any data as to where exactly the Plaintiff fall[s] in this 'line.'"  Pl.'s Opp'n at 13.[9]  Plaintiff, however, offers no reason why his exact place in "line" undercuts defendants' arguments that expediting review in plaintiff's case would certainly "pull government resources" away from other visa adjudications and agency decisions.  *Bagherian*, 442 F. Supp. 3d at 95–96; *see also Tate*, 513 F. Supp. 3d at 150 ("While the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities.").

---

[9]      In opposition, plaintiff argues that defendants "assume without any factual basis" that plaintiff's visa application is "not already at the 'front of the line' or 'completely ignored'" by defendants, Pl.'s Opp'n at 13, but his Complaint does not allege that his visa was unlawfully withheld, only that it was unlawfully and unreasonably delayed, *see generally* Compl.

### 4.    *TRAC* Factor 6

The sixth and final *TRAC* factor, which considers whether "any impropriety lurk[s] behind agency lassitude," is neutral.  *TRAC*, 750 F.2d at 80 (quoting *Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 34 (D.C. Cir. 1984)).  Plaintiff concedes that he "has not alleged any impropriety."  Pl.'s Opp'n at 13.

### 5.    *TRAC* Factors Considered Together

Taking all six TRAC factors together, plaintiff has not stated a claim for unreasonable delay under the APA or the Mandamus Act.  *See Rahimian*, 2023 WL 143644, at *9 (reaching the same conclusion); *Logan v. Blinken*, No. 21-cv-2275, 2022 WL 3715798, at *7 (D.D.C. Aug. 29, 2022) (same); *Arab v. Blinken*, 600 F. Supp. 3d 59, 72 (D.D.C. 2022); *Zaman v. Dep't of Homeland Sec.*, No. 19-cv-3592, 2021 WL 5356284, at *6–8 (Nov. 16, 2021) (same); *Sarlak*, 2020 WL 3082018, at *6 (same).  The relatively minimal thirteen-month delay, prior case law, and the fact that granting plaintiff relief would merely reorder his application in the queue, all support the conclusion that the delay in adjudication of plaintiff's visa is not unreasonable. While *TRAC* factors three and five do weigh somewhat in plaintiff's favor, a holistic review of the factors does not allow these two factors to eclipse the rest.  In this situation, "the government's interests in balancing its own priorities" outweighs the individual harm done to plaintiff and his family as they await a final decision.  *Milligan*, 502 F. Supp. 3d at 320 (quoting *Bagherian*, 442 F. Supp. 3d at 95–96).

Plaintiff is understandably frustrated with the visa application process given his long separation from his son and wife, and the Court has deep sympathy for plaintiff and his family during their separation.  Countless other families, however, are facing similarly difficult circumstances as they await immigration decisions.  *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d

183, 192 (D.C. Cir. 2016) (collecting cases "reject[ing] mandamus claims that would have had the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants"); *Mashpee*, 336 F.3d at 1100 ("refus[ing] to grant relief, even though all the other factors considered in *TRAC* favored it, where 'a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain'" (alterations in original accepted) (quoting *In re Barr Laby's*, 930 F.2d at 75)).

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted.  An Order consistent with this opinion will be filed contemporaneously.

Date:  January 30, 2024

_____
**BERYL A. HOWELL**
United States District Judge